<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAYMOND TOSCANO, et al., | : | CIVIL ACTION NO. 04-4412 (MLC) |
|  | : |  |
|     Plaintiffs, | : | **MEMORANDUM OPINION** |
|  | : |  |
|     v. | : |  |
|  | : |  |
| BOROUGH OF LAVALLETTE, et al., | : |  |
|  | : |  |
|     Defendants. | : |  |

<u>**COOPER, District Judge**</u>

The defendants move pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for the entry of summary judgment in their favor as to the claims asserted against them.[1]  The Court, for the reasons stated herein, will grant the motion in part and deny the motion in part.

<u>**BACKGROUND**</u>

Plaintiff Raymond Toscano ("Toscano") is a police officer for the Borough of Lavallette ("Lavallette").  (Compl., at 1.) Toscano has been employed as an officer for Lavallette for twenty-six years.  (<u>Id.</u> at 2.)  Plaintiff Kim Toscano is his

---

[1] Two defendants are named in the complaint, the Borough of Lavallette, and the Township Council of the Borough of Lavallette.  (Compl., at 1-2.)  The Court will refer to "the defendants", however, the two named entities are essentially the same.  No individual defendants, or members of the Council have been named.

wife.  (Id. at 1.)  Defendant Township Council of the Borough of Lavallette ("the Council") is the governing body for Lavallette.[2] (Id.)

The complaint alleges Toscano "has been the subject of [a] myriad [of] illegal/unconstitutional/untoward/ and/or improper instances of harassment/ridicule/defamation/retaliation/ and/or conspiracy over the last several calendar years at the behest of the defendants."  (Id.)  The conduct began around the year 2000. (Id.)  Toscano alleges that the defendants, inter alia, (1) filed a false police report against him regarding his use of a patrol vehicle, (2) denied his requested hourly vacation time, (3) referred to him as a "stupid guinea" and "gay Ray," (4) threatened to change his shift if he did not write more tickets, (5) took no action when he complained that the records clerk on two different occasions had thrown and hit him with different objects, (6) took no action when he reported that the former chief and other officers were improperly using the police department's computer and internet service, (7) insulted him on various other occasions, and (8) took no action when he filed many grievances.  (Id. at 3-8.)

---

[2] The defendants in their Rule 56.1 Statement of Undisputed Facts indicate that the Council's official title was improperly pled.  The proper designation is "Borough Council of the Borough of Lavallette."  (Defs. Statement of Facts, at 2.)

Toscano brought an action in this Court on September 10, 2004, alleging violations of (1) 42 U.S.C. § ("Section") 1983, (2) the New Jersey Law Against Discrimination ("NJLAD"), (3) the Conscientious Employee Protection Act ("CEPA"), and (4) the Open Public Meetings Act.  (Id.)  Toscano also asserts claims for intentional infliction of emotional distress, negligence, and civil conspiracy.  (Id.)  Kim Toscano asserts a claim for loss of consortium.  (Id.)  The defendants now move for summary judgment as to all the claims asserted against them.  The Court has reviewed the papers submitted in support of, and opposition to the motion, and held oral argument on May 15, 2006.

**DISCUSSION**

The defendants argue that they are entitled to summary judgment because (1) Toscano has not shown that a policy or custom of Lavallette has deprived him of his constitutional rights, (2) they cannot be held vicariously liable for the constitutional violations of their employees, (3) Toscano's speech was not protected, (4) Toscano has not established a conspiracy because the defendants cannot conspire with themselves, (5) Toscano's CEPA claim preempts the NJLAD and common law claims, and (6) the remaining claims, including the claim by Kim Toscano for loss of consortium, have not been established. (Defs. Br., at 10, 12, 19, 26, 28, 31-43.)

3

The plaintiffs argue that (1) Toscano's speech was protected because it dealt with a matter of public concern, (2) the defendants did threaten, retaliate against, and subject Toscano to adverse employment action as a result of his speech, (3) the state and common law claims are independent of the CEPA claim, (4) a genuine issue of fact is raised as to the civil conspiracy count, and (5) Toscano has established a claim for negligence and a derivative claim on behalf of his wife. (Pls. Br., at 4, 5-6, 8, 12, 17, 19.)  The plaintiffs indicate that they voluntarily withdraw the counts alleging intentional infliction of emotional distress, and a violation of the Open Public Meetings Act (counts two and seven).  (Id. at 20.)

The defendants, in reply, argue that the complaint was brought as result of Toscano's desire to settle personal grievances, and that no genuine issues of material fact have been presented.  (Defs. Reply, at 13.)

## I.   Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material

4

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once
the movant has met this prima facie burden, the non-movant "must
set forth specific facts showing that there is a genuine issue
for trial." Fed.R.Civ.P. 56(e).  A non-movant must present
actual evidence that raises a genuine issue of material fact and
may not rely on mere allegations.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 249 (1986).

    The Court must view the evidence in the light most favorable
to the non-movant when deciding a summary judgment motion.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).  At the summary judgment stage, the Court's role is
"not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial." Anderson, 477 U.S. at 249.  Under this standard, the
"mere existence of a scintilla of evidence in support of the
[non-movant's] position will be insufficient [to defeat a Rule
56(c) motion]; there must be evidence on which the jury could
reasonably find for the [non-movant]." Id. at 252.  "By its very
terms, this standard provides that the mere existence of some
alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no genuine issue of material fact."
Id. at 247-48 (emphasis in original).  A fact is material only if
it might affect the action's outcome under governing law.  Id. at

248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  Analysis

### A.   Count 1 - Section 1983

#### 1.   Applicable Law

Toscano alleges that the defendants unlawfully retaliated against him for exercising his First Amendment rights.  (Compl., at 8.)  Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress

42 U.S.C. § 1983.  The statute does not create substantive rights.  Bradshaw v. Twp. of Middletown, 296 F.Supp.2d. 526, 537 (D.N.J. 2003), aff'd, 145 Fed.Appx. 763 (3d Cir. 2005).  It provides remedies for the deprivation of rights established in the Constitution or other federal laws.  Id.  A plaintiff, therefore, must allege that the defendant, acting under color of state law, deprived the plaintiff of such a right.  Id.

Section 1983 provides for a cause of action when a state actor retaliates against an individual for participating or

6

engaging in conduct protected by the First Amendment.  Id.  To state such a claim, the plaintiff must allege that (1) the plaintiff's conduct was protected, (2) the plaintiff was retaliated against, and (3) the retaliation was substantially motivated by the plaintiff's protected conduct.  Id.  The court determines as a matter of law if an activity is protected. Whether (1) the retaliatory action of the defendant "reached the threshold of actionability under § 1983," and (2) the protected activity was a substantial motivating factor in the retaliatory action, are factual questions for a jury.  Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000); see also Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).

To be actionable, retaliatory conduct on the part of an employer need not be a discharge or demotion.  Bradshaw, 296 F.Supp.2d at 538.  "An employment action is considered adverse for the purposes of determining unlawful retaliation, if it is likely to chill a person of ordinary firmness in the exercise of . . . First Amendment rights."  Id. (internal quotes and cites omitted).  The First Amendment's protections against retaliation are broad and include actions as trivial as "failing to hold a birthday party for a public employee."  Suppan, 203 F.3d at 234 (quoting Rutan v. Republican Party, 497 U.S. 62, 76 n.8 (1990)).

An action brought pursuant to Section 1983 is subject to the statute of limitations for personal injury actions in the state

in which the claim arises.  O'Connor v. City of Newark, 440 F.3d 125, 126 (3d Cir. 2006).  In New Jersey, the relevant statute of limitations is two years from when the cause of action accrues.  See N.J.S.A. § 2A:14-2.  "First Amendment retaliation claims are always individually actionable even when relatively minor."  O'Connor, 440 F.3d at 127-28.  The statute of limitations, therefore, begins to run when an alleged retaliatory act occurs.  Id. at 128 (noting that causes of action that can be brought individually expire with the applicable limitations period).[3]  "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Id. at 127 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).

The complaint in this action was filed on September 10, 2004.  Therefore, any alleged retaliatory actions by the defendants that occurred before September 10, 2002, are not actionable for purposes of Toscano's Section 1983 claim.  Evidence of these time barred acts, however, may be considered to

---

[3] First Amendment retaliation claims are not subject to the "continuing violation" exception to the statute of limitations that is applicable to hostile work environment claims.  See infra Section II.C.  A retaliatory act that infringes upon a plaintiff's First Amendment rights is a discrete act.  O'Connor, 440 F.3d at  127.  A hostile work environment claim, however, is based on multiple acts that alone are not individually actionable, but cumulatively provide the plaintiff with a cause of action.  Id. at 128.  In such cases, the filing clock cannot begin to tick with the first act.  Id.

"more intelligently evaluate the evidence that does create liability." Hurley v. Atl. City Police Depot, 174 F.3d 95, 109 (3d Cir. 1999) (circuit court determining that it was not an abuse of discretion for the district court to admit and allow the jury to consider evidence that provided relevant background for the plaintiff's claim, but could not form the basis of the defendant's liability).

## 2.  Application

The Court first addresses whether Toscano engaged in any activity protected by the First Amendment.  Toscano asserts that during the four calendar years prior to bringing this action he was the chief contract negotiator for the Lavallette P.B.A., the Borough's police union.  (Compl., at 2; Toscano Dep., at 17, 20.) "[U]pon information and belief much of the retaliation mentioned herein [the complaint] is attributed to his being such." (Id.)[4]

Participation in union activity is protected conduct under the First Amendment.  Suppan, 203 F.3d at 236 (noting that the plaintiffs were members of the FOP negotiating team and

---

[4] Participation in union activity implicates an individual's freedom of association pursuant to the First Amendment.  Smith v. Ark. State Hwy. Employees Local 1315, 441 U.S. 463, 465 (1979). Application of the two part test regarding Section 1983 claims and protected speech is not invoked in this action based on the facts presented.  The Court, therefore, need not address whether (1) Toscano's speech related to a matter of public concern, and (2) the government's interest in efficiency outweighs Toscano's interest in commenting upon matters of public concern. Baldassare, 250 F.3d at 195.

significantly involved with union leadership, and finding that it was "undisputed" that their engagement in union activities was protected conduct); <u>Labov v. Lalley</u>, 809 F.2d 220, 22-23 (3d Cir. 1987) ("efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the first amendment protects"); <u>Robb v. City of Phila.</u>, 733 F.2d 286, 295 (3d Cir. 1984) (determining that the plaintiff was suffering a violation of First Amendment rights when the defendant retaliated against the plaintiff for his participation in his labor union, and assistance in enforcing its collective bargaining agreement).  The Court determines that, as a matter of law, Toscano's participation in the P.B.A. is a protected activity.[5]

The only retaliatory acts that are actionable, however, are those that occurred after September 10, 2002.  Any claims based on acts that occurred prior to that date are time barred.  The

---

[5] The Court acknowledges that in addition to participating in the P.B.A. during the statutory period, Toscano asserts that he filed approximately twenty-five grievances, submitted written reports regarding the erratic behavior of another officer, and reported (1) that officers were using the police department computer and internet service improperly, (2) derogatory comments that were made about him, and (3) Councilman Zaccaria's use of an improper door at the police department.  (Compl., at 5-8; Toscano Dep., at 51, 78.)  These acts, however, are not matters of public concern, and do not implicate the First Amendment.  Any reports or complaints Toscano may have made regarding the directive to write more tickets, may raise a public concern, but this action is properly considered pursuant to Toscano's CEPA claim.  <u>See infra</u>, Section II.B.

fact that Toscano asserts in the complaint, and confirms in his deposition that he participated in the P.B.A., raises a genuine issue of material fact as to his Section 1983 claim.  (Compl., at 2; Toscano Dep., at 17, 20.)  The pleadings, depositions, and briefs submitted to date raise genuine issues of material fact as to whether (1) the defendants retaliated against Toscano, and (2) Toscano's participation in the P.B.A. was a substantial motivating factor for any retaliation.  As recognized in Suppan, determination of these two elements are properly reserved for a jury.  The Court, therefore, will deny summary judgment as to the Section 1983 claim.

The defendants argue that they do not have liability under Section 1983 according to Monell v. Depot. of Soc. Servs., 436 U.S. 658 (1978).  (Defs. Br., at 10-11.)  Monell held that under Section 1983, a government entity cannot be held liable for the acts of its employees pursuant to the respondeat superior doctrine.  Monell, 436 U.S. at 692.  A government entity can only be held liable when the execution of a government policy or custom injures the plaintiff.  Id. at 693-94.

Municipal policy can be made by official proclamation, or by acquiescence in a permanent custom.  Shehee v. City of Wilmington, 67 Fed.Appx. 692, 695-96 (3d Cir. 2003) (citing Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)). The question of who is a policy-maker is a question of state law.

11

Andrews, 895 F.2d at 1481.  The trial judge must identify which
officials or governmental bodies have "final policymaking
authority for the local governmental actor concerning the action
alleged to have caused the particular constitutional or statutory
violation at issue."  Jett v. Dallas Indep. Sch. Dist., 491 U.S.
701, 737 (1989).  "When an official's discretionary decisions are
constrained by policies not of that official's making, those
policies, rather than the subordinate's departures from them, are
the act of the municipality."  Andrews, 895 F.2d at 1481.  "An
official policy maker can subject [a] municipality to liability
either by knowingly acquiescing in the challenged actions or by
delegating his or her authority to the employee responsible for
those actions."  Shehee, 67 Fed.Appx. at 696.  Once the trial
judge determines who makes the official policy, it is for the
jury to decide whether that party's affirmative policies or
acquiescence to a procedure or custom caused the deprivation of
the plaintiff's rights.  Jett, 491 U.S. at 737.

Toscano's allegations concern actions taken by the police
chief, and various Council members.  The defendants in this
action, essentially the same entity, are the Borough of
Lavallette, and the Borough Council of the Borough of Lavallette.
The police department is an agency within Lavallette.

The defendants, in their answer, however, admit the
following allegations asserted in the complaint: (1) the Borough

12

"operates, by funding, staffing, supervising, and otherwise controlling the operations of the Lavallette Police Department," and (2) the Council "is in fact the governing body for the Township, and its members and had or should have had knowledge of the events relevant to this Complaint." (Compl., at 2; Answer, at 1.) The Court, therefore, determines that the defendants have policymaking authority with respect to the police department. Whether their policies or acquiescence deprived Toscano of his First Amendment rights is a question for the jury. Toscano's Section 1983 claim, therefore, is not barred by the <u>Monell</u> doctrine.

### B.   Count 3 - CEPA

#### 1.   Applicable Law

CEPA prohibits an employer from taking retaliatory action against an employee because the employee, <u>inter</u> <u>alia</u>, "[o]bjects to, or refuses to participate in any activity, policy, or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." N.J.S.A. § 34:19-3(c). To establish a CEPA violation a plaintiff must demonstrate that (1) the plaintiff reasonably believed illegal conduct was occurring, (2) the plaintiff disclosed or threatened to disclose the activity to a supervisor or public body, (3) retaliatory employment action was taken, and (4) a causal connection exists between the whistle-blowing and the

adverse employment action.  <u>Caver v. City of Trenton</u>, 420 F.3d 243, 254 (3d Cir. 2005); <u>Nardello v. Twp. of Voorhees</u>, 873 A.2d 577, 580 (N.J. App. Div. 2005).

CEPA claims are subject to a one year statute of limitations.  The limitation period begins to run when the alleged retaliation that violates the act occurs.  N.J.S.A. § 34:19-5.

Retaliation as defined by CEPA does not have to be a single discrete action.  <u>Green v. Jersey City Bd. of Educ.</u>, 828 A.2d 883, 891 (N.J. 2003).  Besides demotions, suspensions, and discharges, adverse employment action can include "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually, but that combine to make up a pattern of retaliatory conduct."  <u>Id.</u>; <u>Beasley v. Passaic County</u>, 873 A.2d 673, 685 (N.J. App. Div. 2005); <u>see also</u> <u>Nardello</u>, 873 A.2d at 581 (citing <u>Green</u> and holding that alleged retaliatory actions by the employer were relatively minor but combined to demonstrate a pattern of retaliatory conduct).  "A pattern of conduct by an employer that adversely affects an employee's terms and conditions of employment can qualify as retaliation under CEPA."  <u>Beasley</u>, 873 A.2d at 686 (noting that all adverse employment actions need not be the functional equivalent of demotion or suspension and may include changes in salary, hours, length of the workday, fringe

benefits, and promotional procedures).  The statute of
limitations, in those situations, therefore, does not begin to
run upon the occurrence of the first instance of retaliation.
Green, 828 A.2d at 891.

The employee need not specifically articulate the exact
violation that is occurring.  Beasley, 873 A.2d at 684.  The
trial court, however, must identify what statute, rule,
regulation, or public policy the employee reasonably believes is
violated by the employer's conduct, and whether there is a
substantial nexus between the employer's conduct towards the
employee and the identified statute or policy.  Klein v. Univ. of
Med. & Dentistry, 871 A.2d 681, 688 (N.J. App. Div. 2005).
Determination of whether (1) the employee believed that the
employer's conduct was illegal, and (2) such a belief was
reasonable is for a jury.  Caver, 420 F.3d at 254.

### 2.  Application

Toscano, in the text of his CEPA claim, does not pinpoint
which actions of the defendants he reasonably thought were
illegal, but merely references the "Relevant Factual Averments"
section of the complaint.  (Compl., at 10.)  In that section,
Toscano alleges, inter alia, that he was "ordered" to write more
tickets (1) by the police chief in December 2002, and (2) by
Councilman Zaccaria in December 2003, or else his shifts would be
changed.  (Id., at 4, 6.)  Toscano further alleges that this

15

directive was "in violation of state and/or federal law."  (Id. at 4.)  Consistent with the complaint, Toscano also stated in his deposition that he was directed to write more tickets or else his shift would be changed.  (Toscano Dep., at 89-91.)

The Court finds that these allegations and statements do implicate (1) illegal conduct, (2) that Toscano believed that the defendants' conduct was illegal for the purposes of a CEPA claim, and (3) a nexus between the defendants conduct and the directive.[6]  Toscano was not discharged or suspended, but the threatened conduct and the alleged series of adverse actions endured by Toscano following these orders could constitute a pattern of conduct that amounts to retaliation on the part of the defendants.  The defendants acknowledge that Toscano alleges such conduct including "having his shift changed, receiving dirty equipment when other officers received new equipment, unfair working conditions, and changes in his working hours."  (Defs. Br., at 32.)  The complaint also indicates that Toscano filed at least twenty-five grievances regarding the conduct of the police department.  (Compl., at 8.)  Toscano, therefore, has made out a prima facie case for a CEPA claim.  Factual determinations such

---

[6] Toscano alleges that a pattern of retaliatory conduct on the part of the defendants followed the December 2002 order.  He does not pinpoint a single, discrete act of retaliation that resulted from the order, but rather a series of incidents.  Any conduct, therefore, that followed the December 2002 order is actionable, and not barred by CEPA's one year statute of limitations.  See Green, 828 A.2d at 891-92.

as whether (1) Toscano reasonably believed the defendants'
conduct was illegal, (2) the subsequent actions by the defendants
were in retaliation, and (3) there is a causal connection between
the alleged conduct and the adverse employment actions are
decisions that must be made by a jury.  See Caver, 420 F.3d at
254.

The Court, viewing the facts in the light most favorable to
Toscano, as it must, finds that Toscano's complaint and
deposition raise genuine issues of material fact as to the
elements of the CEPA claim.  The grant of summary judgment,
therefore, as to the CEPA claim is not appropriate.

## C.   Count 4 - NJLAD

### 1.   Applicable Law

Toscano alleges that the defendants' derogatory comments
related to his ethnicity created a hostile work environment in
violation of the NJLAD.  (Compl., at 11.)[7]  The NJLAD makes it
unlawful for an employer to discriminate against an employee on
the basis of, inter alia, race, color, national origin, and
ancestry.  N.J.S.A. § 10:5-12(a).  To establish a hostile work

---

[7]As pled in the complaint, the NJLAD claim alleges creation
of a hostile work environment based on the defendants' comments
about Toscano's ethnicity, not his sexual orientation.  (Compl.,
at 11.)  The Court, however, recognizes that Toscano alleges that
on various occasions he was called "gay Ray."  (Id. at 4; Toscano
Dep., at 64-68.)  These comments provide additional background
when considering the alleged derogatory comments made by the
defendants that show racial animus.

environment claim under the NJLAD, a plaintiff must demonstrate that the defendant's conduct (1) would not have occurred but for the employee's protected status, (2) was severe or pervasive enough to make, (3) a reasonable person believe that, (4) the conditions of employment are altered and that the working environment is hostile and abusive. <u>Caver</u>, 420 F.3d at 262; <u>Shepherd v. Hunterdon Dev. Ctr.</u>, 803 A.2d 611, 625 (N.J. 2002). Generally, offhanded comments and isolated incidents are not sufficient to sustain a claim, but the court must look to the totality of the circumstances to determine whether the alleged conduct is sufficiently severe. <u>Caver</u>, 420 F.3d at 262-63 ("a discrimination analysis must concentrate not on individual incidents, but on the overall scenario").

The statute of limitations for claims arising under the NJLAD is two years. <u>Shepherd</u>, 803 A.2d at 621. The continuing violation doctrine, however, provides an exception to the limitations period for NJLAD claims. <u>Id.</u> A hostile work environment claim is comprised of a series of separate acts that collectively constitute an "unlawful employment practice." <u>Id.</u> at 622. Such a claim does not arise from a single discrete act. <u>Id.</u> A hostile work environment claim, therefore, is timely if a plaintiff can demonstrate that each act by the defendant contributes to a pattern of discriminatory conduct and at least one of those acts took place within the statutory time period.

18

Mancini v. Twp. of Teaneck, 846 A.2d 596, 599 (N.J. 2004).  The
continuing violation exception exposes the defendant to liability
for acts that standing alone occurred outside the limitations
period.  Id.

### 2.  Application

Toscano alleges in the complaint that Councilman Coviello
made racial comments in May 2000.  This allegation, however,
cannot form the basis of a hostile work environment claim because
Toscano has not submitted any admissible evidence to support it.
See Fiorglio v. City of Atlantic City, 996 F.Supp. 379, 385
(D.N.J. 1998) ("[e]vidence that can be considered by a court
under Rule 56 is normally of the same quality of evidence that a
fact finder may consider at trial").  Toscano indicates, both in
the complaint and his deposition, that he did not hear the
remarks firsthand.  He merely indicates that he "received
information that Councilman Coviello used grievous racial
epithets," and that there was an incident where Coviello was
overheard making derogatory remarks.  (Compl., at 3; Toscano
Dep., at 29-32.)  Coviello, however, never admitted saying those
things to Toscano.  (Toscano Dep., at 32.)  These statements
without more constitute hearsay and are not admissible.  See
e.g., Beasley, 873 A.2d at 682 (holding that plaintiff's
testimony as to what his supervisor told him was said by an
unknown declarant was hearsay and should have been neither

admitted nor considered).  Coviello's alleged remarks, therefore, are not actionable and cannot be considered as part of the hostile work environment claim.[8]

The remaining alleged instances of racial and derogatory comments by the defendants do establish a prima facie case of a hostile work environment.  Toscano alleges that after the Coviello incident, the next instance of derogatory racial comments occurred in the Winter of 2002 when the police chief called him a "stupid guinea."  (Compl., at 4; Toscano Dep., at 64-68.)  As alleged in the complaint, instances of similar racially motivated and derogatory comments continued up to at least May 2004.  (Compl., at 4-7.)[9]  These actions fall within the two year statute of limitations.  The Court need not consider the continuing violation exception because the complaint was

---

[8] The complaint in this action was filed on September 10, 2004.  Because the Court is not considering Coviello's alleged comments in the Winter of 2000 for the reasons stated, the Court makes no determination as to whether the comments would fall within the statutory period pursuant to the continuing violation exception.

[9] The Court recognizes that Toscano has been the subject of a criminal wiretap investigation by the Ocean County Prosecutor's Office.  Toscano alleges that the investigation demonstrates the defendants' pattern of retaliation and hostility towards him. The Court, without further motion practice, will not exclude the consideration of this event.  While the Court recognizes that the wiretap investigation was not undertaken by the defendants, at the time it was initiated, Robert Peck, who formerly worked in the Ocean County Prosecutor's office, was the acting chief of police for Lavallette.  (Peck Dep., at 12-14.)

filed on September 10, 2004, and the acts of the defendants
alleged in the complaint occurred after September 10, 2002.

In addition to the allegations of the complaint, Toscano's
deposition raises genuine issues of material fact as to the
elements of a hostile work environment claim.  In his deposition,
Toscano asserts that he was called a stupid guinea, and gay Ray.
(Toscano Dep., at 64-68.)  Several statements in other
individuals' depositions also raise a genuine issue of material
fact.  For example, Chief Swearingen said he thought he referred
to Toscano as gay Ray once, and the former Mayor, Thomas Walls,
believed he called Toscano a renegade cop.  (Swearingen Dep., at
36; Walls Dep., at 62.)

The first element of a hostile work environment claim is
satisfied because the comments alleged to have been made by the
police chief implicate Toscano's national origin and ancestry.
The other alleged incidents could contribute to a pattern of
discriminatory conduct directed at Toscano.  The severity of the
defendants' conduct, and the reasonableness of Toscano's belief
that such conduct altered and created a hostile work environment
are factual determinations that are properly reserved for the
jury as the trier of fact.  See Shepherd, 803 A.2d at 626-27
(noting the defendants' acts, viewed cumulatively were sufficient
to present the NJLAD claim to a jury); Taylor v. Metzger, 706
A.2d 685, 693-94 (N.J. App. Div. 1998) (finding that plaintiff

presented enough evidence of the severity of the remark to raise
a genuine issue of material fact).  The part of the defendants'
motion seeking the entry of judgment in their favor as to
Toscano's NJLAD claim, therefore, will be denied.

### D.   Remaining Counts

Toscano has withdrawn counts two and seven of the complaint
that assert claims for intentional infliction of emotional
distress and violation of the Open Public Meetings Act.  (Pls.
Br., at 20.)  The Court, therefore, will dismiss these claims as
withdrawn.  The Court will also grant summary judgment in favor
of the defendants as to the remaining claims for negligence,
civil conspiracy, and the per quod claim asserted by Kim Toscano.

### 1.   Count 5 - Negligence

Toscano alleges that the defendants acted in a careless and
negligent manner by allowing, "condoning, ratifying, and/or
acquiescing to libelous and slanderous statements of and
concerning the plaintiff." (Compl., at 12.)  The complaint goes
on to allege that the defendants' negligent actions created a
hostile work environment.  (Id., at 12-13.)  This claim is an
alternate common law cause of action.  It asserts no new
allegations against the defendants, and is based on the same
factual assertions as Toscano's NJLAD claim.  It is merely an
alternate way to plead discrimination and retaliation.

22

A supplementary common law cause of action is not allowed
when the NJLAD provides a remedy for the wrong.  Butler v.
Sherman, Silverstein, & Kohl, P.C., 755 F.Supp. 1259, 1265
(D.N.J. 1990) (interpreting two decisions from the New Jersey
Supreme Court); Catalane v. Gilian Instrument Corp., 638 A.2d
1341, 1349 (N.J. App. Div. 1994) ("supplementary common law
causes of action may not go to the jury when a statutory remedy
under [NJ]LAD exists").  Toscano's NJLAD claim survives the
defendants' motion for summary judgment.  It provides the avenue
through which Toscano may seek redress for the creation of a
hostile work environment.  Summary judgment, therefore, will be
granted in favor of the defendants as to Toscano's negligence
claim.

### 2.   Count 6 - Conspiracy

In New Jersey, the elements of a claim for a civil
conspiracy claim are (1) a combination of two or more persons,
(2) a real agreement or confederation with a common design, (3)
the existence of an unlawful purpose to be achieved by unlawful
means, and (4) special damages.  Eli Lilly & Co. v. Roussel
Corp., 23 F.Supp.2d 460, 496 (D.N.J. 1998); see also Banco
Popular N. Am. v. Gandi, 876 A.2d 253, 263 (N.J. 2005).

Toscano alleges that "certain employees of the defendants
conspired . . . to violate his federal constitutional rights."
(Compl., at 13.)  A conspiracy by definition requires an

23

agreement between two or more persons.  In this action, however,
he has only brought suit against essentially one entity,
Lavallette.  Toscano has not brought suit against any individual
persons or other separate entities.  Lavallette, as an "abstract
entity," can only act through the members of its Council.
See Sunkett v. Misci, 183 F.Supp.2d 691, 722 (D.N.J. 2002).  A
municipal entity, however, cannot conspire with itself.  Farris
v. County of Camden, 61 F.Supp.2d 307, 330 (D.N.J. 1999).
Toscano has failed to show a combination of two or more persons.
The Court, therefore, will grant summary judgment in favor of the
defendants' as to the civil conspiracy claim asserted against
them.

### 3.    Count 8 - Per Quod Claim

Summary judgment is also appropriate with respect to Kim
Toscano's per quod claim.  A per quod claim is a derivative claim
that depends of the existence of another cause of action.  The
only claims of Toscano that survive summary judgment are those
alleging violations of Section 1983, CEPA, and the NJLAD.  None
of these statutes, however, provide for a per quod action for
loss of consortium.  Horvath v. Rimtec Corp., 102 F.Supp.2d 219,
236 (D.N.J. 2000) (right to recover on a loss of consortium claim
depends on the existence of tortious conduct on the part of the
defendants); Jones v. Jersey City Med. Ctr., 20 F.Supp.2d 770,
773 (D.N.J. 1998) ("in the context of a NJLAD action there is no

24

permitted <u>per quod</u> action for loss of consortium"); <u>Verde v. City of Phila.</u>, 862 F.Supp. 1329, 1337 n.5 (E.D. Pa. 1994) (Section 1983 only provides for a personal right of action, not a derivative loss of consortium claim); <u>Catalane</u>, 638 A.2d at 1352 (citing <u>Flaherty v. Enclave</u>, 605 A.2d 301, 305 (N.J. Law Div. 1992)) ("[p]er <u>quod</u> damages are also not recoverable under the 'whistleblower' statute"); <u>see also</u> <u>Hurley</u>, 174 F.3d at 130 (citing <u>Catalane</u> for determination that the NJLAD makes no provision for a per quod claim).

### <u>CONCLUSION</u>

The Court, for the reasons stated <u>supra</u>, will grant the defendants' motion for summary judgment in part, and deny the motion in part.  An appropriate order and judgment will be issued.


                                    s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge