NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ ) | |
| POLICE OFFICER RAYMOND TOSCANO ) | |
| AND KIM TOSCANO, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 04-4412 (GEB) |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| THE BOROUGH OF LAVALLETTE AND ) | |
| THE TOWNSHIP COUNCIL OF THE ) | |
| BOROUGH OF LAVALLETTE, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion to set aside settlement of Plaintiffs Raymond Toscano ("Plaintiff Toscano") and Kim Toscano ("Mrs. Toscano") (collectively, "Plaintiffs"). The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Plaintiffs' motion.

**BACKGROUND**

On September 8, 2004 Patrick P. Toscano, Jr., Esq. ("Attorney Toscano" or "Counsel") filed a complaint on behalf of Plaintiffs against the Borough of Lavallette and the Township Council of the Borough of Lavallette (collectively, "Lavallette" or "Defendants"). (Compl.) Plaintiff Toscano set forth claims for intentional infliction of emotional distress, negligence and civil conspiracy, claims under the Conscientious Employee Protection Act, the Open Public Meetings Act, the Faulkner Act and the New Jersey Law Against Discrimination, and a claim

under 42 U.S.C. § 1983.   (Compl. ¶¶ 12, 15-16, 20, 23, 28, 31, 34.)  Mrs. Toscano's claims were derivative of her husband's.  (*Id.* at ¶¶ 35-37.)

      The Court held a telephone conference with the parties on April 24, 2007 during the course of which the parties advised the Court that "settlement negotiations [had been] successful."  (Docket Entry 04/24/2007.)  On that day, the Court entered an Order dismissing this matter as settled.  (Docket Entry No. 24.)  On September 24, 2007, however, Plaintiffs filed the instant motion to set aside the settlement.

**DISCUSSION**

      Plaintiffs contend that they have proven by clear and convincing evidence that the settlement agreement reached in this matter should be rescinded.  The Court agrees.

      New Jersey courts have consistently held that "[t]here is a strong policy in favor of settling litigation."  *Promotion*, at *16, *citing Nolan v. Leeho*, 120 N.J. 465, 472 (1990).  "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, and even in the absence of a writing."  *Promotion in Motion v. Kenny's Candy Co.*, No. 97-3512, 1999 U.S. Dist. LEXIS 22174, at **14-15 (D.N.J. Nov. 30, 1999), *quoting Cooper-Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 96 (3d Cir. 1984). As a result,

> in the absence of fraud, misrepresentation or overreaching . . . , in the absence of a showing that the [party seeking to set aside the settlement] was suffering from an incapacity affecting his ability to understand the meaning of the release and in the absence of any other equitable ground, it is the law of this State that the [settlement] is binding and that the [party] will be held to the terms of the bargain he willingly and knowingly entered.

*Aponte v. Williard*, 229 N.J. Super. 490, 494 (N.J. Super. Ct. App. Div. 1989), *citing Raroha v.*

*Earle Finance Corp. Inc.*, 47 N.J. 229, 234 (N.J. Super. Ct. 1966).  Any ground for rescission must be established by clear and convincing evidence.  *Borough of Haledon v. Borough of North Haledon*, 358 N.J. Super. 289, 305 (N.J. Super. Ct. App. Div. 2003), *quoting DeCaro v. DeCaro*, 13 N.J. 36 (1953); *see also Jennings v. Reed*, 381 N.J. Super. 217, 227 (N.J. Super. Ct. App. Div. 2005) ("the party seeking to set aside the settlement agreement has the burden of proving his incapacity or incompetence to contract or other extraordinary circumstance sufficient to vitiate the agreement.");  *Seacoast Realty Co. v. W. Long Branch Borough (Monmouth County)*, 14 N.J. Tax 197, 201 (N.J. Tax. Ct. 1994) (settlement agreements are contracts, and are "vacated only upon a showing by clear and convincing proof of compelling circumstances."), *citing Nolan*, 120 N.J. at 472.

Plaintiffs' motion turns on the claim that Attorney Toscano settled the matter with Defendants without Plaintiff Toscano's authorization.   "In New Jersey, an attorney for a private party may settle a lawsuit based on actual or apparent authority to do so.  Actual authority may be either express or implied."  *Seacoast Realty*, at 202-03, *citing Newark Branch, N.A.A.C.P. v. West Orange Twp.*, 786 F. Supp. 408, 423 (D.N.J. 1992); *United States Plywood Corp. v. Neidlinger*, 41 N.J. 66, 73-74 (1963).  "Under implied [actual] authority an agent is authorized to do what he may reasonably infer the principal desires him to do in light of the principal's manifestations and facts as he knows or should know them when he acts." *Lampley v. Davis Mach. Corp.*, 219 N.J. Super. 540, 548-49 (N.J. Super. Ct. App. Div. 1987), *citing Lewis v. Travelers Ins. Co.*, 51 N.J. 244, 251 (1968).  As for apparent authority, it:

> must be created by words or conduct of the principal. . . .  Essential
> to the creation of apparent authority are words or conduct of the
> principal, communicated to a third party, that give rise to the

appearance and belief that the agent possesses authority to enter
into a transaction. The agent cannot by his own acts imbue himself
with apparent authority.  Moreover, the third party's reliance must
be reasonable.

*Seacoast Realty*, 14 N.J. Tax at 203, *quoting Hallock v. State*, 64 N.Y.2d 224 (N.Y. 1984).

"[S]ending an attorney to a settlement conference presumptively establishes that the attorney has

authority to settle . . . ."  *Seacoast Realty*, 14 N.J. Tax at 204. "[A]pparent authority may even be

found where the principal denies having granted authority to settle, but nevertheless places the

attorney in a position where 'a person of ordinary prudence . . . is justified in presuming that such

agent has authority to perform the particular act in question.'"  *Id.* at 204-05, *quoting United*

*States Plywood*, 41 N.J. at 74.

       1.     Plaintiffs' Arguments

     After informing Plaintiff Toscano that a settlement conference would be held on

September 26, 2006, Attorney Toscano allegedly advised him to accept Defendants' offer "if

they offered $125,000."  (Pl. Br. at 1, *citing* Certification of R. Toscano ("R. Toscano Cert.") ¶

4.)  Plaintiff Toscano submits that he made clear to Attorney Toscano that such an amount would

be unacceptable and that he "wished to proceed to trial."  (Pl. Br. at 2, *citing* R. Toscano Cert. ¶

5.)

     Plaintiff Toscano contends that he took part in the aforementioned telephone conference

along with Attorney Toscano, Magistrate Judge Hughes and Defendants' attorney.   According to

Plaintiff Toscano, he declined Defendants' offer of settlement for $100,000, telling Attorney

Toscano after the call that he "would not accept any offer since he was advised that the $125,000

was no longer being offered."  (Pl. Br. at 2, *citing* R. Toscano Cert. ¶ 6.)  Attorney Toscano then

responded by email that Plaintiff Toscano "should accept the [then-]current offer before [D]efendants took it off the table." (Pl. Br. at 2, *citing* R. Toscano Cert. ¶ 8.)

Plaintiff Toscano claims to have received a January 24, 2007 letter from Attorney Toscano noting that Judge Hughes only valued the case at $75,000, and that Defendants' offer of $100,000 was off the table.  (Pl. Br. at 2, *citing* R. Toscano Cert. ¶ 9.)  The following day, Attorney Toscano allegedly faxed to Defendants' attorneys a letter accepting, on behalf of Plaintiff Toscano, Defendants' settlement offer of $107,500.[1]  (Pl. Br. at 3, *citing* R. Toscano Cert. ¶ 11, Ex. E.)  Plaintiff Toscano submits that he was not aware of this acceptance letter and insists that he had never authorized Attorney Toscano to settle the matter.  (Pl. Br. at 2.) Plaintiffs claim that since they did not know that Attorney Toscano had settled the matter, they contacted him repeatedly in the following months about the trial they believed to be imminent. (Pl. Br. at 3-4.)  Indeed, Plaintiffs claim to have received an email from Attorney Toscano on April 16, 2007 indicating that "a trial date will likely be set."  (Pl. Br. at 4, *citing* R. Toscano Cert. ¶ 15, Ex. I.)  Plaintiffs submit that these representations by Attorney Toscano, in light of the earlier correspondence with Defendants' counsel, must lead the Court to the conclusion that Attorney Toscano acted inappropriately and that his actions warrant setting aside the settlement.

Plaintiffs maintain that Attorney Toscano's improper behavior did not end there.  On April 24, 2007, Attorney Toscano allegedly advised Plaintiff Toscano that a conference call would be held with Magistrate Judge Hughes that afternoon, and that the matter would be settled for $107,500. (Pl. Br. at 4, *citing* R. Toscano Cert. ¶ 16.)  Attorney Toscano confirmed later that

---

[1]     Consisting of $100,000 for the instant action, plus $7,500 allegedly owed to Attorney Toscano for representation of Plaintiff Toscano's son in another matter. (Pl. Br. at 3.)

day that the matter had been settled before the Judge for that amount. *Id.* Plaintiff Toscano

claims to have immediately questioned the amount of the settlement through an email to

Attorney Toscano, to which Attorney Toscano allegedly responded that "you authorized me to

get whatever i [sp] could, especially since they took all offers off the table/the case is settled."

(Pl. Br. at 4, *citing* R. Toscano Cert. ¶ 18, Ex. L.)  Plaintiff Toscano contends that he repeatedly

emailed Attorney Toscano over the following days to inform him that he had not been authorized

to settle for less than $125,000 and that Plaintiff Toscano was rejecting the settlement.  (Pl. Br. at

5, *citing* R. Toscano Cert. ¶ 19.)  Attorney Toscano allegedly dismissed Plaintiff Toscano's

requests and advised him to seek other counsel.  (Pl. Br. at 5.)

>    Plaintiffs submit to the Court that Attorney Toscano's behavior amounted to deception,

undue pressure and unseemly conduct, and that the settlement reached by the parties in this

matter must therefore be vacated.  (Pl. Br. at 7.)

>    2.    Defendants' Arguments

>    Defendants, however, maintain that this is not one of those rare cases in which setting

aside the settlement is warranted.  Def. Opp'n at 4.  Defendants submit that "it cannot be, and is

not, disputed by the Plaintiffs that they have agreed to accept a settlement of $125,000."  (*Id.*)

Defendants even allege that "[t]he brief submitted by the Plaintiffs . . . acknowledges that [they]

have authorized their attorney to accept a settlement of $125,000."  (*Id., citing* Pl. Br. at 9.)

>    Moreover, Defendants claim that "the lengthy settlement between and among counsel for

the parties engendered a belief that the Plaintiff's attorney possessed the authority necessary to

settle this matter", a belief that was "bolstered by [Plaintiff Toscano's] presence during at least

one settlement conference, whereupon it was conferred to Defense Counsel that Plaintiff would

accept a settlement of $125,000.00." (Def. Opp'n at 5.) Defendants allege that Plaintiffs requested $125,000 at that conference, but that Defendants were only prepared to settle for $100,000. (*Id.*) Defendants contend that an October 2, 2006 letter by Attorney Toscano to counsel for Defendants confirmed Plaintiffs' position when it stated that it "serve[d] to confirm that [Plaintiffs] will in fact accept the sum of $125,000.00 to settle the above matter." (*Id., citing* Murphy Certification ("Murphy Cert.") Ex. B.) This position was once again confirmed, say Defendants, when they received a fax from Attorney Toscano on October 12, 2006 stating that Plaintiff Toscano would "settle this matter for the sum of $125,000.00, today." (Def. Opp'n at 6, *quoting* Murphy Cert. Ex. E.)[2] At that point, according to Defendants, Attorney Toscano had both actual and apparent authority to settle the matter for $125,000.

Counsel for Defendants claims to have received on January 25, 2007 a letter from Attorney Toscano noting that his "client [would] accept the sum of $107,500.00 to settle the case in its entirety." (Def. Opp'n at 6, *citing* Murphy Cert. Ex. G.) The matter was in fact settled, during the April 24, 2007 conference call, for that sum. (Def. Opp'n at 7, *citing* Murphy Cert. Ex. J.) Defendants submit that when Plaintiff Toscano learned of the settlement through Attorney Toscano, he emailed his attorney asking: "for 125,000 not 107,500?" (Def. Opp'n at 7, *citing* Murphy Cert. Ex. M.) Defendants submit that "this query, at the very least, serves to confirm that [Attorney Toscano] was certainly vested with the authority to settle the matter for $125,000.00, if not $107,500.00." (Def. Opp'n at 7.)

Defendants conclude that "the situation before [the Court] is not one in which it would be

---

[2]     Defendants note that the letter was erroneously dated October 2, 2006. The correct date, according to them, is revealed by the fax's tagline at the bottom of the document. (Def. Opp'n at 6.)

appropriate to set aside the settlement reached between and among the parties." (*Id.* at 8.) They claim that "[n]ot only do the facts clearly set forth that [Attorney Toscano] believed that he had actual authority to settle the case, [they also] clearly set forth that all involved persons and entities . . . reasonably believed that [he] was vested with authority to act as an agent for his client and to settle this matter." (*Id.*)

       3.      Analysis

      Having reviewed all the evidence submitted by the parties, and in spite of New Jersey's strong policy in favor of settling litigation, the Court holds that Plaintiffs have established by clear and convincing evidence that the settlement should be set aside.

      The Supreme Court of Vermont explained, in *New England Educational Training Service, Inc. v. Silver Street Partnership*, 148 Vt. 99 (1987),

> that an attorney has no authority to compromise or settle his client's claim without his client's permission. An attorney, once employed, commonly has the power to negotiate with opposing counsel regarding possible settlement of the dispute. The authority to negotiate with opposing counsel is appropriately characterized as one of the implied powers incident to an attorney's general authority to conduct the procedural aspects of a client's case. Nevertheless, an important distinction must be drawn between an attorney's authority to bind his client conduct negotiations and his authority to bind his client to a settlement agreement without express permission. The latter is within the ambit of the subject matter of litigation, which remains at all times within the control of the client, and cannot be implied from authority to conduct negotiations. Accordingly, we hold that retention of an attorney to represent one's interest in a dispute, with instructions to conduct settlement negotiations, without more, does not confer implied authority to reach an agreement binding on a client.

*Id.* at 104 (citations omitted). While that opinion is not binding, the Court will adopt its reasoning in the case at bar. The record is devoid of any indication – other than Attorney

Toscano's conclusory allegations – that Plaintiff Toscano had given him authority to settle the case for $107,500.  There is also no evidence to suggest that Attorney Toscano had the implied authority to do so.  In fact, the evidence establishes only that Attorney Toscano may have had the implied authority, and the apparent authority, to settle the matter for $125,000.  That is of no moment here.  The Court therefore holds that Plaintiffs have established by clear and convincing evidence that Attorney Toscano had no authority to bind Plaintiff Toscano under the settlement.

**CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiffs' motion to set aside the settlement.  An appropriate form of Order accompanies this Opinion.

Dated: January 2, 2008

   s/ Garrett E. Brown, Jr.

GARRETT E. BROWN, JR., U.S.D.J.
